UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL JAMES SOUTHARD,

        Plaintiff,

    v.                                    **DECISION AND ORDER**
                                                        17-CV-867S

COMMISSIONER OF SOCIAL SECURITY

        Defendant.
_____

    1.    Michael James Southard brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security that partially denied his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

    2.    On March 21, 2018, Plaintiff filed a Motion for Judgment on the Pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 8). On May 14, 2018, the Commissioner filed a Motion for Judgment on the Pleadings. (Docket No. 11). Plaintiff filed a reply on June 11, 2018 (Docket No. 13), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is DENIED, and Defendant's motion is GRANTED.

    3.    On April 4, 2014, Plaintiff protectively filed an application for DIB and SSI with the Social Security Administration ("SSA"). (R.[1] at 196-208). Plaintiff alleged disability since October 7, 2011 due to a spine injury; meniscus tear (left knee); hearing

---

[1] Citations to the underlying administrative record are designated as "R."

1

loss with ringing; and reading and spelling problems. (R. at 333). On February 21, 2014, the SSA denied Plaintiff's applications (R. at 71-91), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 94). On September 21, 2016, ALJ Lynette Gohr held a hearing at which Plaintiff—assisted by counsel—appeared and testified. (R. at 26-62). Vocational expert ("VE") Roxanne Benoit also appeared and testified at the hearing via telephone. (R. at 56-62). At the time of the hearing, Plaintiff was 54 years old (R. at 329), with at least a 12th grade education (R. at 32), and worked part-time as a locksmith (R. at 33-37). Plaintiff had past work experience as a laborer/carpenter and as a mover. (R. at 334).

4. The ALJ considered the case *de novo* and, on November 22, 2016, issued a partially favorable written decision, granting Plaintiff's application for benefits as of June 24, 2016, but finding that Plaintiff was not disabled within the meaning of the Act prior to that date. (R. at 8-20). Therefore, the ALJ denied Plaintiff's application for benefits for the period between the alleged onset date October 7, 2011, and June 23, 2016. Id. The Appeals Council denied Plaintiff's request for review on July 5, 2017. (R. at 1-7). Plaintiff filed the current action on September 1, 2017, challenging the Commissioner's final decision.[2] (Docket No. 1).

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[2] The ALJ's November 22, 2016 decision became the final decision of the Acting Commissioner of Social Security ("Commissioner") on this matter when the Appeals Council denied Plaintiff's request for review.

Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

3

whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

  8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

  9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20

4

C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ's decision analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 7, 2011, the alleged onset date. (R. at 14). At step two, the ALJ found that Plaintiff had the following severe impairments: left knee medial meniscus tear; degenerative disc disease of the lumbar spine with foraminal stenosis, and facet arthropathy; and hearing loss. (R. at 14-15). At step three, the ALJ found that Plaintiff's impairments, singly or in combination, did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15).

11. Next, the ALJ determined that since October 7, 2011, Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) with certain exceptions[3]. (R. at 15-18).

12. At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R. at 18). Prior to step five, the ALJ noted that Plaintiff "falls within a borderline age situation" (R. at 18), because at the time of the hearing, Plaintiff was "closely approaching advanced age." See 20 C.F.R. 404.1563. At "advanced age" (age 55 or older), the SSA "consider[s] that age significantly affects a person's ability to adjust to other work." Id.

13. The ALJ noted that adjudicating Plaintiff's claim based on his then-current age category would result in a finding that he is not disabled, but that evaluation under

---

[3] The ALJ found that Plaintiff retained the RFC for light work, "except that [Plaintiff] can occasionally balance, stoop, kneel, crouch and crawl, can occasionally reach overhead with the bilateral upper extremities, can never climb ropes, ladders or scaffolds, is limited to simple, routine tasks and is limited to work environments with no more than moderate noise." (R. at 15).

5

the next age category would result in a finding of disabled. (R. at 18). Applying the age categories non-mechanically, the ALJ determined that Plaintiff became disabled on June 24, 2016[4], the date Plaintiff attained an age within six months of age 55. (R. at 18).

14. At step five, the ALJ found that prior to June 24, 2016, the date Plaintiff's age category changed, Plaintiff could perform jobs that exist in significant numbers in the national economy given his age, education, work experience, and RFC. (R. at 19). Accordingly, the ALJ determined that Plaintiff was not under a disability prior to the established onset date. Id.

15. The ALJ also found that as of the established onset date, there were no jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 19-20). Accordingly, the ALJ determined that Plaintiff became disabled on June 24, 2016. (R. at 20).

16. Plaintiff maintains that the ALJ's evaluation of Plaintiff's RFC is not supported by substantial evidence because the ALJ improperly discounted the portions of Dr. Cameron Huckell's opinion that limited Plaintiff to part-time work. (Docket No. 8 at 12-18; Docket No. 13 at 1-5). This argument rests on the assumption that Dr. Huckell[5] was a treating physician, rather than a consulting physician.

17. The treating-physician rule requires that an ALJ give the medical opinion of a claimant's treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see 20 C.F.R. § 404.1527(c)(2). The "less consistent [a treating

---

[4]The established onset date. (R. at 18).
[5] Plaintiff saw two physicians with the same last name for different complaints: Dr. Graham Huckell (knee), and Dr. Cameron Huckell (back). (R. at 882-921). All references to "Dr. Huckell" in this opinion refer to Dr. Cameron Huckell, because his opinion is the sole basis for Plaintiff's present appeal. (Docket Nos. 8, 11).

6

physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999).

18. The ALJ must give "good reasons" for giving a treating physician's medical opinion less than controlling weight, and failure to do so is a ground for remand. See 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). When the ALJ does not give a treating physician's medical opinion controlling weight, he must explain how he weighed the factors in 20 C.F.R. § 404.1527(c). See Reyes v. Barnhart, 226 F. Supp. 2d 523, 529 (S.D.N.Y. 2002).

19. Under 20 C.F.R. 404.1527(a)(2), a "treating physician" is a claimant's own acceptable medical source who provides medical treatment or evaluation and has (or has had) an ongoing treatment relationship with the claimant." The SSA will find that an ongoing treatment relationship exists between a claimant and an acceptable medical source when "the medical evidence establishes that [claimant] see[s], or [has seen], the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [claimant's] medical condition(s)." Id. However, if a claimant's relationship with a source "is not based on [claimant's] medical need for treatment or evaluation, but solely on [claimant's] need to obtain a report in support of [a] claim for disability," the SSA will consider the source to be a nontreating source. Id.

20. No arbitrary number of visits is dispositive of whether an acceptable medical source is considered a treating source, rather it is the "nature—not the length—of the relationship that is controlling." Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 55 (2d Cir. 1992); see 20 C.F.R.§§ 404.1502, 416.902.

21. As a threshold matter, all parties agree that Dr. Huckell qualifies as an acceptable medical source, so we turn directly to an analysis of the nature of the doctor-Plaintiff relationship.

22. In this case, Plaintiff's primary care provider referred him to Dr. Huckell for consultation regarding lower back pain. (R. at 659, 670, 687, 475). Plaintiff met with Dr. Huckell on four occasions between November 8, 2012, and August 13, 2013. (Docket No. 8 at 16); (R. at 659-64, 670-74, 687-91, 475-79). It should be noted that in his Reply Brief, Plaintiff incorrectly states that Dr. Huckell met with Plaintiff seven times. (Docket No. 13 at 4). However, the record reflects only four such visits: November 8, 2012 (R. at 659-64, *repeat at* 887-91); February 19, 2013 (R. at 670-74, *repeat at* 897-901); May 15, 2013 (R. at 687-91, *repeat at* 912-16); and August 13, 2013 (R. at 475-79, *repeat at* 549-53, 610-614, 692-96, 917-21).

23. At each visit, Dr. Huckell performed a physical exam and evaluated Plaintiff's disability for workers' compensation purposes. (R. at 661-63, 672-74, 689-91, 477-79). Exam results from each visit were consistent, and indicated that Plaintiff had a normal gait, adequate balance and coordination, and did not use an assistive walking device, though Plaintiff had a reduced range of motion (ROM) in his lumbar spine. (R. at 661, 672-73, 689, 477).

24. At the first visit, on November 8, 2012, Dr. Huckell recommended that Plaintiff "consider surgery when he can no longer tolerate his pain," and opined that Plaintiff would not be "able to return to any type of blue collar work withor without surgery." (R. at 662). Dr. Huckell further opined that "[Plaintiff] has very limited sitting and standing

8

capacity and given his poor experience for sedentary work at best I think he would be able to return to only part-time or sedentary work." Id.

25. Dr. Huckell did not order any tests or additional x-rays, but noted "[w]e will review [Plaintiff] again in time for reassessment." (R. at 662-63). Regarding Plaintiff's workers' compensation disability claim, Dr. Huckell stated "[i]t is my opinion that [Plaintiff] has a temporary partial disability to a marked degree (75%) at this time as a result of the work[-]related accident according to the old New York State guidelines." (R. at 662).

26. The doctor also noted the following work restrictions, which were repeated in each subsequent report:

> [Plaintiff] should avoid bending, stooping, reaching, twisting, crawling or climbing. [Plaintiff] should not lift anything greater than 20 pounds. [Plaintiff] should avoid sitting, standing or walking for more than 2 hours at one time without a break and the total work day should not exceed 4 hours/ 20 hours per week.

(R. at 663, 674, 690-91, 478).

27. Dr. Huckell met with Plaintiff three more times, at approximately three-month intervals, with similar results.[6] By his February 19, 2013 visit with Dr. Huckell, Plaintiff had been approved for spinal fusion (at the request of Dr. Egnaitchik), but did not want to proceed with surgery. (R. at 671). Dr. Huckell noted that Plaintiff would "more likely than not […] eventually need surgery," but "[Plaintiff] hasn't yet reached the threshold where he wants to pursue that option," and "he is willing to live with some of the numbness that he experiences." Id.

---

[6] Physical exam results were consistent, except that the exam results from May 15, 2013 also noted that Plaintiff had mild paravertebral muscle rigidity. (R. at 689).

9

28. Dr. Huckell again evaluated Plaintiff as having "a temporary partial disability to a marked degree (75%)" as a result of his work-related injury and repeated the above work restrictions. (R. at 674). Dr. Huckell further stated "[Plaintiff] might benefit from an independent functional capacity evaluation but in my opinion based on our discussions at best he could do only light part-time sedentary work given his present status and pain levels. I considered [sic] to be totally disabled for all blue collar or full-time sedentary work." (R. at 674).

29. On May 15, 2013, Dr. Huckell noted that Plaintiff was able to tolerate his pain, and that he still did not want to pursue surgery. (R. at 690). Once again, Plaintiff was deemed to have "a temporary partial disability" along with the above work restrictions. Id. In preparation for Plaintiff's upcoming workers' compensation permanency hearing, Dr. Huckell sent Plaintiff to Buffalo Ergonomics for a functional capacity examination ("FCE") and stated, "[w]e will review [Plaintiff] again in three months for review of his FCE and for permanency." (R. at 690-91). Dr. Huckell did not order any other tests or x-rays, but "[a]t [Plaintiff's] request, he was provided a one-time prescription for Ibuprofen 600 mg." (R. at 690). Plaintiff's other medication request, for Lidoderm patches, was denied and he was directed to contact his primary care provider for a refill. Id.

30. On August 13, 2013, Plaintiff met with Dr. Huckell for his workers' compensation permanency evaluation. (R. at 475-79). The physical exam again showed that Plaintiff had a normal gait, adequate balance and coordination, and did not use an assistive walking device, though Plaintiff still had a reduced range of motion (ROM) in his lumbar spine. (R. at 477). Dr. Huckell repeated his recommendation that "[Plaintiff]

10

consider surgery when he can no longer tolerate his pain," but noted that "[Plaintiff] has not yet reached that threshold." (R. at 478).

31. The report also indicated that Dr. Huckell did not believe Plaintiff would ever be able to return to work as a carpenter, but he found that Plaintiff did "demonstrate the ability to work at a light duty capacity." (R. at 478). Plaintiff's work restrictions remained the same, but at this point, Dr. Huckell's evaluation of Plaintiff's disability changed from "temporary" (R. at 662, 674, 690), to "permanent." (R. at 478).

32. Each of Dr. Huckell's reports was sent to the Workers' Compensation Board, Plaintiff's family doctor, the New York State Insurance Fund, and to the attorney handling Plaintiff's workers' compensation claim. (R. at 659, 663, 670, 674, 687, 691, 475, 479). After Plaintiff's final visit in August of 2013, Dr. Huckell also submitted a Doctor's Report of MMI/Permanent Impairment to the New York State Workers' Compensation Board. (R. at 615-19).

33. In this report, Dr. Huckell opined that Plaintiff would be unable to perform his at-injury work activities, either with or without restrictions, and that Plaintiff would benefit from vocational rehabilitation. (R. at 617-18). Dr. Huckell also evaluated Plaintiff's RFC, indicating Plaintiff could occasionally lift/carry 20 pounds, or pull/push 30 pounds; frequently lift/carry 15 pounds, or pull/push 10 pounds; and constantly lift/carry 5 pounds, or pull/push 7 pounds; could frequently sit, stand, and walk; occasionally climb, kneel, and bend/stoop/squat; and could drive constantly.[7] (R. at 617). Dr. Huckell also indicated that Plaintiff's exertional ability met the level required for "Light Work," described as:

---

[7] The Workers' Compensation form defines "occasionally" as the ability to "perform activity up to 1/3 of the time;" "frequently" as the ability to "perform the activity from 1/3 to 2/3 of the time;" and "constantly" .as the ability to "perform the activity more than 2/3 of the time." (R. at 617).

11

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently and/or negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may only be a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. Note: The constant stress of a maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

(R. at 618).

34. An ALJ has the responsibility to determine a claimant's RFC based on all the relevant medical and other evidence on the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a), 404.1546(c). The claimant has the burden to demonstrate functional limitations that preclude any substantial gainful activity. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3); SSR 96-4p, 1996 WL 374187; see also Bowen, 482 U.S. at 146 n.5. Further, the claimant must present sufficient evidence showing functional limitations during the relevant time period, October 7, 2011 through June 23, 2016. See Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989).

35. Here, the ALJ considered the entire record, including the opinion of Dr. Huckell, but concluded that Dr. Huckell's opinion "relate[s] to [Plaintiff's] status under Workers' Compensation law, [is] time-limited, and appl[ies] standards inapplicable here." (R. at 17). The ALJ further noted that Dr. Huckell's opinion "do[es] not provide any insight

into [Plaintiff's] functional abilities or limitations." Id. Accordingly, the ALJ did not consider Dr. Huckell to be a treating physician and gave his opinion only partial weight. Id.

36. Specifically, the ALJ gave little weight to the portion of Dr. Huckell's opinion that limited Plaintiff's number of work hours per day and per week, finding that "such assessment is unexplained and unsupported by the objective findings in the record." (R. at 17). The ALJ found the remainder of Dr. Huckell's opinion to be "consistent with the record and with the other opinions in the record," so afforded significant weight to those portions of the opinion. Id.

37. Plaintiff argues that the ALJ failed to apply the proper evaluative standard to Dr. Huckell's opinion because the ALJ erroneously considered him to be nontreating source. In support of his contention that Dr. Huckell is a treating physician, Plaintiff claims that "Dr. Huckell saw Plaintiff seven times from October 2012 to August 2013, and discussed treatment modalities and ordered diagnostic tests," and emphasizes that "the consultation request was by […] Plaintiff's primary care provider." (Docket No. 13 at 4).

38. The source of the consultation referral is accurately stated, however, as previously mentioned, Dr. Huckell saw Plaintiff only four times, rather than the seven Plaintiff claims. (R. at 659-64, 670-74, 687-91, 475-79). The record also does not support Plaintiff's claim that Dr. Huckell ordered diagnostic tests. (R. at 663, 674, 691, 478). The only test Dr. Huckell recommended was that Plaintiff obtain an FCE in preparation for his workers' compensation permanency evaluation, review of which was the explicit purpose of Plaintiff's fourth and final[8] visit. (R. at 691, 475-79).

---

[8] On December 17, 2015 Plaintiff was referred to Dr. Huckell for re-evaluation, but there is no indication in the record that Plaintiff made or attended another such appointment. (R. at 874).

13

39. Dr. Huckell did perform physical examinations and discussed treatment options with Plaintiff, but any decision about whether to proceed with surgery was left to Plaintiff's subjective evaluation of his pain. (R. at 662, 673, 688, 478). Reports from each consultation[9] were used to support Plaintiff's workers' compensation claim, and the record explicitly indicates that the final appointment was made for that sole purpose. (R. at 690-91). Over the course of four visits, the only treatment Dr. Huckell provided was to authorize a one-time refill of Ibuprofen at Plaintiff's request (R. at 690).

40. In addition, Dr. Huckell rendered his opinion of Plaintiff's disability and work restrictions at the initial visit (R. at 662-63), before any ongoing treatment relationship was formed. See Cramer v. Berryhill, 2017 U.S. Dist. LEXIS 175676, *6, 2017 WL 4784318 (W.D.N.Y. Oct. 24, 2017) (holding that a doctor "was not a treating physician when he rendered an opinion during [a claimant's] first visit") (citing Kane v. Astrue, No. 1:10CV1874, 2011 U.S. Dist. LEXIS 85332, 2011 WL 3353866, at *7 (N.D. Ohio Aug. 23, 2011) ("For purposes of the treating physician rule, the question is whether the physician had the ongoing relationship with the claimant to qualify as a treating physician at the time he rendered his opinion. Clearly, Dr. Ahn did not have an ongoing relationship with Plaintiff at the time of her first visit.") (internal quotation marks, citation, and alterations omitted); Hickman v. Colvin, No. 1:13-cv-00089, 2014 U.S. Dist. LEXIS 82914, 2014 WL 2765670, at *12 (M.D. Tenn. June 18, 2014) ("[O]pinions rendered during a physician's first visit with a claimant are not entitled to controlling weight."), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 94653, 2014 WL 3404967 (M.D. Tenn. July 10, 2014).

---

[9] Both Dr. Huckell and Plaintiff consistently refer to these visits as "consultation[s]." (R. at 659, 663, 670, 674, 687, 691, 475, 479), (Docket No. 8 at 8, 9), (Docket No.13 at 4).

14

41. Here, neither Plaintiff's initial visit with Dr. Huckell (prior to the formation of an ongoing treatment relationship), nor his final visit (conducted for the express purpose of furthering Plaintiff's workers' compensation claim), constituted an ongoing treatment relationship. Furthermore, notes from the two intervening visits, in which Dr. Huckell repeated verbatim his initial evaluation of Plaintiff's disability "according to the old New York State guidelines," strongly support an inference that these visits were also based solely on Plaintiff's need to obtain a report to support his workers' compensation claim. (R. at 674, 690-91). Accordingly, this Court finds that substantial evidence supports the ALJ's conclusion that Dr. Huckell was a not a treating physician.

42. Because the ALJ did not consider Dr. Huckell to be a treating source, she did not err in failing to give his opinion controlling weight. However an ALJ is obligated to "evaluate every medical opinion [she] receive[s]." 20 C.F.R. 404.1527(c). Here, the ALJ properly discounted the portions of Dr. Huckell's opinion that found Plaintiff to be disabled, because such findings "are not medical opinions, […] but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. 1527(d)(1); see Snell v. Apfel, 177 F.3d 128, 133 (2 Cir. 1999) ("[T]he ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner'.") (*citing* 20 C.F.R. 1527[e][1]).

43. The ALJ afforded little weight to the portions of Dr. Huckell's opinion that impose work restrictions on Plaintiff, because Dr. Huckell's opinion was "time-limited and appl[ied] standards inapplicable [to a Social Security disability claim]," and was "unexplained and unsupported by the objective findings in the record." (R. at 17).

15

44. This Court finds that the ALJ's rationale for discounting these work restrictions to be adequate. As the ALJ correctly points out, Dr. Huckell's opinion was "time-limited" (R. at 17), in that Dr. Huckell described Plaintiff's disability as "temporary" (R. at 662-63, 674, 690) after each of the first three visits. Further, Dr. Huckell's opinion that Plaintiff "should avoid sitting, standing or walking for more than 2 hours at one time without a break and the total work day should not exceed 4 hours/ 20 hours per week" (R. at 663, 674, 690-91, 478) is not supported by clinical or laboratory findings that explain these durational limitations, nor are they consistent with Dr. Huckell's own notes.

45. On August 13, 2013, Dr. Huckell opined that "[Plaintiff] demonstrated the ability to work at a light duty capacity" (R. at 478), and on August 17, 2013, he indicated in a workers' compensation form that Plaintiff retained the RFC to sit and/or stand and/or walk at least 1/3 of the day, and to drive—an activity that involves sitting—more than 2/3 of the day, and that Plaintiff would be able to meet the exertional requirements for "light work," which was defined as requiring "walking or standing to a significant degree; or […] sitting most of the time." (R. at 617-18).

46. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated:   December 28, 2018
         Buffalo, New York

                                                    /s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                              United States District Court Judge